[Crim. No. 1256. Second Appellate District, Division One.—June 18, 1926.]

## THE PEOPLE, Respondent, v. CHARLES G. JACKSON, Appellant.

[1] CRIMINAL LAW—MURDER—ENGAGEMENT IN UNLAWFUL ACT PRE-
CEDING KILLING—EVIDENCE—INSTRUCTIONS.—In a prosecution for
murder, an objection to an instruction based upon the claim that
the defendant was guilty of no unlawful act preceding the killing
cannot be sustained, where the undisputed evidence showed that
the defendant was gambling with dice, declared to be unlawful
by section 330 of the Penal Code.

[2] ID.—INTENT—PROVOCATION—INSTRUCTIONS.—In a prosecution for
murder which occurred after the deceased had threatened merely
that if the defendant laid hands upon her she would use the
gun which she had drawn, and after the defendant had left the
room and returned with a gun and fired the same as he entered
the room, that part of an instruction which informed the jury
that the fact, if established, that the defendant had been attacked
would not mitigate or excuse the homicide, nor would the fact that
the act of defendant was done suddenly after the intent to commit
the homicide was formed, was a proper instruction; as also was that
part of an instruction which declared that the fact that the
defendant was in a passion would not mitigate or excuse homicide,
that the crime would be murder in spite of the fact that the act
was done suddenly after the intent to commit the homicide was
formed.

[3] ID.—INSTRUCTION IN WORDS OF SECTION 197, PENAL CODE—AB-
SENCE OF REVERSIBLE ERROR.—In such prosecution, the trial court
did not commit reversible error in giving an instruction in the
exact words of section 197 of the Penal Code.

[4] ID.—APPREHENSION OF DANGER—NATURE OF—INSTRUCTIONS.—In
such prosecution, an instruction which informed the jury that the
mere apprehension of danger is insufficient to justify a homicide
and that fear sufficient to justify a killing must be such as would
excite the fears of a reasonable person, properly stated the law
and was competent.

2. See 13 Cal. Jur. 598.
3. See 8 Cal. Jur. 321; 14 R. C. L. 772.
4. See 13 Cal. Jur. 638; 13 R. C. L. 816, 817.

[5] ID.—BAD LANGUAGE OF DECEASED—JUSTIFICATION FOR KILLING—
INSTRUCTIONS.—In such prosecution, on the point as to whether
the bad language of ·the deceased was a justification for the act
of the defendant, the trial court correctly instructed the jury ˙as
follows: "But if the intent exists and the killing is unlawful, it
will be murder, even though done upon a sudden quarrel or heat
of passion, unless there was adequate provocation. In considering
what is regarded as such adequate provocation, it is a settled rule
in law that neither provocation by words only, howeve**r** opprobrious,
nor contemptuous, or insulting actions, or gestures without an
assault upon the person, nor any trespass against lands or goods,
are of themselves sufficient to reduce the offense of an intentional
homicide with a deadly weapon from murder to manslaughter."

[6] ID.—REPUTATION—INSTRUCTIONS.—In such prosecution, a given in-
struction that "the defendant in this case had the right, as a
reasonable person, in forming his belief of the imminence of the
danger and the necessity to take the life of the deceased, to take
into consideration what he knew of the bad reputation of the
deceased," covered the point contained in defendant's proposed in-
struction, which the trial court refused, to the effect that the jury
were to take into consideration the state of mind of the defendant
at the time of shooting if they believed from the evidence that
the defendant knew that the party attacking was a dangerous
character.

[7] ID.—SELF-DEFENSE—INSTRUCTIONS.—In such prosecution, no re-
versible error was committed by the trial court in refusing to
give the following requested instruction: "You are instructed that
a person is not required to exercise any due care or circumspection
as to the manner of killing in self-defense where the appearances
are such as to justify a reasonable man in believing that it is
necessary to kill another in order to save himself from death
or a great bodily harm."

[8] ID.—INSTRUCTIONS.—In such prosecution, there was not before the
court sufficient evidence to make applicable to the case a requested
instruction to the effect that absolute necessity for self-defense
exists where a person who has not ₒbrought on the assault is
placed in "such jeopardy by the sudden attack of the assaulting
person in a murderous manner."

[9] ID.—SELF-DEFENSE—FLIGHT—INSTRUCTIONS.—In such prosecution,
there was no error in refusing to give defendant's proposed in-

---

5.  Insults or epithets as provocation, see notes in 4 L. R. A.
(N. S.) 155; 38 L. R. A. (N. S.) 100. See, also, 13 Cal. Jur. 611;
13 R. C. L. 796.

9.  See 13 Cal. Jur. 666.

struction, where the point raised therein to the effect that defendant might be justified in taking the life of the deceased, even though it later proved that he might have gained safety in flight, was covered by a given instruction.

[10] ID.—INSTRUCTIONS—EVIDENCE.—In such prosecution, the refusal to give defendant's requested instruction "that where a person is forced to the necessity of self-defense he may pursue his adversary until he finds himself out of danger," was not error, where there was no evidence of pursuit of the defendant by the deceased.

[11] ID.—INSTRUCTIONS.—In such prosecution, a portion of a given instruction as follows: "But if the intent exists and the killing is unlawful it will be murder, even though done upon a sudden quarrel or heat of passion, unless there was adequate provocation," was not erroneous when considered in connection with other portions of given instructions.

[12] ID.—INSTRUCTED VERDICT—CORRECTNESS OF RULING—APPEAL.—In such prosecution, the ruling denying a motion for an instructed verdict was correct; and such ruling may not be reviewed on appeal, beyond the point of determining whether there was an absence of any substantial evidence as to some fact the prosecution was bound to prove.

---

(1) 16 C. J., p. 931, n. 5, p. 1043, n. 37, p. 1045, n. 39, p. 1046, n. 45, p. 1063, n. 85; 30 C. J., p. 322, n. 62, 65, p. 337, n. 86, 87, p. 351, n. 29.   (2) 30 C. J., p. 37, n. 25 New, p. 357, n. 97, p. 364, n. 83.   (3) 16 C. J., p. 1031, n. 88.   (4) 30 C. J., p. 61, n. 3, p. 62, n. 14, p. 376, n. 66, p. 378, n. 72.   (5) 30 C. J., p. 48, n. 18.   (6) 16 C. J., p. 1067, n. 97.   (7) 16 C. J., p. 1066, n. 89; 30 C. J., p. 368, n. 16.   (8) 30 C. J., p. 376, n. 66, p. 377, n. 67.   (9) 16 C. J., p. 1063, n. 85.   (10) 30 C. J., p. 380, n. 92, p. 382, n. 97.   (11) 16 C. J., p. 1049, n. 82, p. 1050, n. 84, p. 1053, n. 93.   (12) 17 C. J., p. 248, n. 97.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Guy Eddie for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney General, and James S. Howie for Respondent.

YORK, J.—The evidence very clearly exhibits the case as one of cold-blooded murder. The evidence, as we view

it, shows that the threats of the deceased were merely that if defendant laid hands upon her she would use the gun which she had drawn. That thereafter, after the defendant had left the room he returned with a gun and, as one of the witnesses puts it, fired as he jumped into the room, and followed this with another shot.

There occurred in this case the usual small discrepancies between the testimony of the witnesses. There is a direct conflict between the testimony of the defendant and some of the other witnesses as to whether he fired from the hallway or whether he fired after he entered the room, and there is a conflict in the testimony of the defendant and most of the other witnesses as to whether or not the deceased pointed her pistol in his direction immediately prior to his firing the first shot.

On an examination of the entire case we cannot consider that there has been any miscarriage of justice herein. As we view it, in the light of the facts shown in evidence, the theory of self-defense has no reasonable relation to the case. The dispute between the witnesses for the defense and the prosecution as to the facts is a matter that is left to the sound discretion of the jury. They are the final arbiters of the facts.

The objections of the defendant to the instructions given, and to the refusal of requested instructions lose much of their force by reason of the fact that the instructions given, taken as a whole, very fully and fairly state the law of the case. We do not find any errors therein of such serious or prejudicial nature that they require much discussion. This applies definitely to appellant's assignments of error in relation to instructions given. Concerning the nine refusals of requested instructions, all discussed in the brief for appellant, we are also of the opinion, after an examination which we have made of the evidence introduced herein, that there is no evidence which in any way tends to mitigate defendant's crime, and even his own testimony hardly substantiates the claim of justifiable self-defense. This will necessarily limit somewhat our discussion of the rejected instructions. An examination of the refused instructions and a comparison of the same with all of the instructions given clearly shows that, in so far as the refused instructions are applicable to the facts in evidence herein, they are fully

covered by the instructions given. The instructions fully set forth to the jury in clear and concise language what constituted adequate provocation. It is therefore manifest to the court that counsel for appellant has not succeeded in showing that by such refusals—when considered in connection with the instructions actually given to the jury—his client was deprived of any element of a fair trial. In so far as the offered instructions are in themselves free from objection, they are fairly covered, in substance if not in form, by the instructions given.

[1] Appellant's point I is apparently based upon a claim that the defendant was guilty of no unlawful act preceding the killing, yet there is undisputed evidence that the defendant was gambling with dice, declared to be unlawful by section 330 of the Penal Code. Therefore, the instruction objected to is correct. The court, in this instruction objected to, made no declaration of fact as to whether or not the deceased was engaged in the performance of an unlawful act. The instruction properly left that question to the sole determination of the jury. [2] That part of the instruction which informed the jury that the fact, if established, that the defendant had been attacked would not mitigate or excuse the homicide, nor would the fact that the act of defendant was done suddenly after the intent to commit the homicide is formed, was a proper instruction under the facts shown in the transcript; as also was that part of the instruction which declared that the fact that the defendant was in a passion would not mitigate or excuse homicide, that the crime would be murder in spite of the fact that the act was done suddenly after the intent to commit the homicide was formed. This statement of the law is, in substance, laid down in the case of *People* v. *Hunt,* 59 Cal. 430, and particularly at page 435 of said decision. Under the facts in this case the first nine lines of the instruction given were unnecessary and not particularly applicable to the case, but when taken with all the other instructions we cannot say that the rights of the defendant were thereby prejudiced, but we hold that that portion of the instruction objected to was proper under the facts in evidence in this case. (See *People* v. *Ye Foo,* 4 Cal. App. 730, particularly at page 738 [89 Pac. 450].)

· [3] In point II appellant assigns as error the giving of an instruction in the exact words of section 197 of the Penal Code. The facts in that case at bar are in no manner identical with the case of *People* v. *McDonnell*, 32 Cal. App. 694, 703 [163 Pac. 1046], and in the McDonnell case the holding was particularly limited to the facts in that case. In *People* v. *Glover*, 141 Cal. 233 [74 Pac. 745], and in *People* v. *Fowler*, 178 Cal. 657, 670 [174 Pac. 892], the court held that error cannot be predicated upon an instruction which states the law as the legislature has fixed it by statute, if the same is applicable to the case in which the instruction is given.

[4] The appellant objects to that part of the instruction appearing on page 43 of the clerk's transcript: "But it must also appear to his comprehension as a reasonable man, that to avoid such danger it was necessary for him to take the life of the deceased." However, this instruction, taken as a whole, properly states the law. It informed the jury that mere apprehension of danger is insufficient to justify a homicide, and that fear sufficient to justify a killing must be such as would excite the fears of a reasonable person. (*People* v. *Westlake*, 62 Cal. 303.) In the case of *People* v. *Maughs*, 149 Cal. 253, 259 [86 Pac. 187], the instruction was different in form from that before the court in the case at bar. In this case the deceased had retreated and put down her gun and the defendant had left the room. The gun was still down by her side when the defendant emerged from the bedroom, came down the hall and re-entered the gambling-room and opened fire upon the deceased. Such facts being before the jury this instruction was competent. (*People* v. *Burns*, 27 Cal. App. 227 [149 Pac. 605].) Appellant's contention that this instruction in effect told the jury that the defendant must have gone to extreme lengths to retreat from the danger and that he was bound to retreat if retreat were possible is not a reasonable interpretation of the instruction given.

[5] The appellant complains of the court's refusal to give an instruction as follows: "You are instructed that the calling of a person a bad name, or the use of profane and vulgar language to a person, is no excuse or justification by itself for the person against whom such bad language is used to pull a pistol or even to use any force whatsoever in

defense against this bad language.'' The question for the jury in this case was whether the bad language of deceased was a justification for the act of the defendant. On this point the court correctly instructed the jury: ''But if the intent exists and the killing is unlawful, it will be murder, even though done upon a sudden quarrel or heat of passion, unless there was adequate provocation. In considering what is regarded as such adequate provocation, it is a settled rule in law that neither provocation by words only, however opprobrious, nor contemptuous, or insulting actions, or gestures without an assault upon the person, nor any trespass against lands or goods, are of themselves sufficient to reduce the offense of an intentional homicide with a deadly weapon from murder to manslaughter.''

[6] Appellant's point V is a claim that the court erred in refusing to give his proposed instruction appearing on page 29 of the clerk's transcript, in which he asked the jury to take into consideration the state of mind of the defendant at the time of shooting if they believed from the evidence that the defendant knew that the party attacking him was a dangerous character. However, this identical point was covered in one of the instructions given, to wit: ''You are instructed that the defendant in this case had the right, as a reasonable person, in forming his belief of the imminence of the danger and the necessity to take the life of the deceased, to take into consideration what he knew of the bad reputation of the deceased.''

[7] Point VI of the appellant is an objection to the refusal to give the following instruction: ''You are instructed that a person is not required to exercise any due care or circumspection as to the manner of killing in self-defense, where the appearances are such as to justify a reasonable man in believing that it is necessary to kill another in order to save himself from death or great bodily harm.'' In the case of *People* v. *Thompson,* 145 Cal. 717 [79 Pac. 435], cited by appellant, the facts were quite dissimilar from the facts in the case at bar, and the instruction in the Thompson case was by no means as broad as the one requested here. The jury here were instructed as follows: ''You are instructed that a person acting under the law of self-defense may act upon appearances and will be justified in acting upon them even though they happen to

be false, providing he was influenced by said appearances as any reasonable person would be, and believed from the appearances that he was in actual danger of death or serious bodily harm.'' The jury were also instructed: ''You are instructed that if you find from the evidence that the defendant was suddenly and dangerously attacked by the deceased and was at the time in imminent danger of great bodily harm at the hands of the deceased the defendant would be justified in taking the life of the deceased, even though it be proved that he might have easily gained safety by flight.''

Point VII made by the appellant is the refusal to give an instruction to the effect that defendant in forming the belief as to the imminence of danger and the necessity of taking the life of his adversary had the right to take into consideration the bad reputation of the deceased for being a dangerous person. He contends that the instruction already cited by us is not broad enough to fully protect the defendant's rights. The instruction plainly shows that the phrase ''bad reputation,'' therein contained, referred to the matter of the danger in which the defendant stood, and her bad reputation was to be considered as part of that danger. This, of course, included her reputation as a ''dangerous character,'' if she had such reputation.

[8]  The next error claimed by appellant is the refusal to give an instruction that absolute necessity for self-defense exists when a person who has not brought on the assault is placed in ''such jeopardy by the sudden attack of the assaulting person in a murderous manner.'' There was not before the court sufficient evidence to make this instruction applicable to the case.

[9]  The appellant's point IX is answered by the instruction shown in the clerk's transcript, pages 44 and 45, wherein the court stated the law on the point raised in the proposed instruction, in that he informed the jury that defendant might be justified in taking the life of deceased even though it later proved that he might have gained safety in flight.

[10]  Point XII, wherein appellant alleges as error the refusal to give the following instruction: ''You are instructed that where a person is forced to the necessity of self-defense he may pursue his adversary until he finds him-

self out of danger.'' To support this point appellant cites the case of *People* v. *Hecker,* 109 Cal. 451 [30 L. R. A. 403, 42 Pac. 307]. In that case the court said that one had the right to pursue and slay in order to secure safety, but the pursuit must not be in revenge nor after the necessity for defense has ceased, but it must be prosecuted in good faith to the sole end of winning his safety and securing his life. (See page 463, *supra; People* v. *Robertson,* 67 Cal. 647, 8 Pac. 648.) In the case at bar there was no evidence of pursuit of the defendant by the deceased. He merely claimed that, if she had so desired, she might have rushed to the top of the stairs and fired down the stairs as he was leaving. There is nothing in evidence in this case which could give him any possible reason to believe. that she was attempting to do anything of that kind.

[11] Appellant's point XIII is a claim that it was improper to instruct the jury as follows: "But if the intent exists and the killing is unlawful, it will be murder, even though done upon a sudden quarrel or heat of passion, unless there was adequate provocation.'' This part quoted is but part of an instruction and is to be construed, of course, with the other portions of the instructions given, and especially with the immediately preceding and the immediately following instructions given by the court as to what constitutes first and second degree murder, and what constitutes manslaughter, and so considered, is not erroneous.

[12] The ruling denying the motion for an instructed verdict was entirely correct. Such ruling may not be reviewed here, beyond the point of determining "whether there was an absence of any substantial evidence as to some fact that the prosecution was bound to prove.'' (*People* v. *Lewis,* 124 Cal. 551 [45 L. R. A. 783, 57 Pac. 470].)

The judgment and order are affirmed.

Conrey, P. J., and Houser, J., concurred.